Good morning. Let's start with the Sherrod v. Esurance Insurance Services, Inc. Please proceed. Good morning, Your Honors. May it please the Court, in the full name of Elizabeth Barcelucci, I represent the defendants of Collins Esurance Insurance Services. Your Honors, I'm here today to discuss with you why the Circuit Court's grant of summary judgment in the plaintiff's favor should be reversed. I do believe it is erroneous as a matter of law, and I will discuss the reasons why. I think as an overarching theme to my argument today, I would propose consistency. And consistency being something that is very necessary to both insurers and insured parties in Illinois in their dealings. There are two sides to an insurance policy. There's an insurance company that assesses risk and charges premiums based on the risks that it's assessed, and applying the law that applies in that state where it's issuing a policy. And then there's the policyholder's expectations and willingness to pay premiums for certain levels of coverage. Here, the primary issue we have identified is whether or not the vehicle with which the plaintiff was involved in an accident was an underinsured motor vehicle. Underinsured motor vehicle is defined by both the Illinois Insurance Code and the policy here. And if the policy has a more restrictive definition, then the statutory definition would apply. Here, we believe that they are equally applicable. They're similar definitions, and plaintiff does not contend that the policy's definition of underinsured motor vehicle is not accurate. To be an underinsured motor vehicle, the vehicle with which the plaintiff had to have been involved in an accident has to have had liability limits less than the insured's own underinsured motorist limits. Here, that is clearly not the case. It's undisputed that the tortfeasor's bodily injury liability limits were $100,000 per person and $300,000 per accident. Mr. Rod, the plaintiff's underinsured motorist coverage limits were $50,000 per person and $100,000 per occurrence. So as a matter of law, the vehicle with which she was involved in an accident was not an underinsured motor vehicle. And in my eyes, that is dispositive of the issues here, truly. This policy is being sought for coverage on an underinsured motorist coverage basis only. There is no dispute about coverage under any other portion of the policy. So we look to the underinsured motorist provisions and the insuring agreement to determine initially whether underinsured motorist coverage is even triggered. Here, because Ms. Sherrod recovered more than her own policy's underinsured limits of liability, she was not involved in an accident with an underinsured motor vehicle, and the court's analysis truly should end there. The provision that plaintiff has raised is an other insurance provision, which is a limited provision within the policy. Other insurance provisions deal with situations where there are multiple carriers or multiple coverages that are being sought to cover a particular loss. Here, the policy's other insurance language specifically says, if there is other similar insurance to the underinsured or uninsured motorist coverage here, then the following provisions apply. Here, we are not dealing with multiple underinsured motorist coverages. We are dealing with Ms. Sherrod's underinsured motorist coverage and Mr. Fratelli's filing injury liability coverage. They're not similar coverages, and for that reason, the other insurance provisions are not triggered and not implicated by the facts here. Even if they were, we can examine them, and these exact same terms have been construed by at least two appellate court decisions and found to be unambiguous. In short, plaintiff is trying to create coverage out of a perceived ambiguity that doesn't exist, and it's in a limiting provision within the policy. It's not within the insuring agreement. Once you have your insuring agreement, you can then look to set up provisions, other insurance provisions, exclusions to a policy. We are not attempting to invoke any exclusion to the policy. Well, we are invoking the set-up provisions if the triggering event of being involved in an underinsured motor vehicle accident is satisfying, which we don't think it is. But our basis for coverage has nothing to do with a limiting provision of the policy. It's simply that the facts of this case do not trigger the overarching insuring agreement for underinsured motorist coverage. So I think that's where we definitely diverge from plaintiff in our arguments. Plaintiff says we're trying to invoke exclusionary language, which we are not. We are saying, as a threshold matter, this accident does not trigger coverage under the underinsured motorist provisions of the policy. And I think, as I said, going back to the theme of consistency, insurance companies in Illinois have to base premiums on risks and the law in Illinois as it stands at the time they issue the policies. Policyholders similarly pay premiums based on the risks that they're willing to accept. In this case, Ms. Sherrod opted to have bodily injury liability limits, meaning if she were involved in an accident and harmed someone else, the maximum amount that person would be able to recover under her policy would be $50,000 per person, $100,000 per accident. So her UAM coverage was the same, $50,000, $100,000. And the premium she paid reflected that. So if she had injured someone in excess of her own bodily injury limits, that person would then have to try to recover under their own underinsured motorist coverage, as she is now trying to do. However, she is in the fortunate situation of having been involved in an accident with someone whose coverage actually exceeded her own. These facts just simply don't fall within the underinsured motorist provisions of either the insurance code or the policy. And for that reason, we think the trial court's judgment simply can't stand. I think it's notable that the trial court, in fact, even though it cited the Coulson decision about ambiguous set-off provisions in insurance policies, it actually never found that the set-off provisions in this policy were ambiguous. And plaintiff's counsel has conceded that the assuring provisions and the set-off provisions in this policy are not ambiguous. The only ambiguity plaintiff asserts exists in the other insurance provisions, which we argue are not even triggered by the facts of the case. And we do think that if the court went on to opine on the meaning of the other insurance provisions, that wouldn't constitute an advisory opinion. I am here also to answer any questions you have, so I'd like to leave a little bit of time if you have any questions for me. I'm sorry, no questions, counsel. Okay. Well, I'll just then cite a couple of the more relevant cases. The McElmill case out of the 1st District from 2006 and the Willison case out of the 4th District from 1998 both deal with other insurance provisions with this exact same language. And in McElmill, the court noted that the plaintiff is arguing the other insurance provisions are ambiguous but cites no authority for that proposition. So now we are in the fortunate position of having not one but two Illinois decisions that have held that these exact same other insurance provisions are not ambiguous. To try to get around that fact, plaintiff's counsel, as you may have noted, has relied exclusively on Missouri case law to support his position. And as we argue that's improper for various reasons, one being that the policy contains a choice of law provision requiring that Illinois law be applied to the facts of 20 coverage dispute. The second reason is that we're in Illinois and the parties never litigated choice of law as an issue in the child court. It was, I think, assumed going into the case that Illinois law applied. We have an Illinois insured, a policy issued in Illinois, and an accident that occurred in Illinois. There's no connection to this case to Missouri other than plaintiff's counsel attempting to say that there's no Illinois decision on point that addresses whether these other insurance provisions are ambiguous. And that's simply not the case. We have two decisions that explicitly address these other insurance provisions and found them to be unambiguous and, in fact, secure other ambiguities found within insurance policies. And that leads to another good point, which is that the circuit court here appeared to say it found an ambiguity in the other insurance provision so that weighed in favor of finding coverage, despite the fact that the insuring agreement itself wasn't analyzed and found to actually trigger coverage. Here, the case law that goes into such issues where there are inconsistencies or ambiguities in declarations to insurance policies have literally found, the McEnil case found four areas of ambiguity in the insurance policy there, but then found the other insurance provisions at issue here cured the ambiguities elsewhere in the policy. So I think both sides here agree that the court has to look at the policy as a whole and read everything in context. It can't take an isolated provision, as Plaintiff's counsel has done, and say that read on its own seems ambiguous. The language that precedes the other insurance language here makes very clear this is talking about multiple underinsured motorist coverages. Plaintiff's counsel has chosen to ignore the introductory language and say this one paragraph is ambiguous standing alone and so there should be coverage. And unfortunately, the circuit court agreed with that without really providing any analysis. It was a very short opinion. Plaintiff's summary judgment motion was very short and I think it sent shockwaves to the people who read it because it's very inconsistent with established Illinois law. And it will significantly impact insurance companies that issue insurance policies in Illinois. If they believe that they can be held viable for underinsured motorist coverage when their insurers are not, in fact, involved in accidents with underinsured motorists, premiums will skyrocket or insurers will stop insuring automobile policies in Illinois. And I think those are the bigger public policy considerations the court should keep in mind. And I ask that you reverse the circuit court's summary judgment in Plaintiff's favor and grant summary judgment on defendant's counter cross motion for summary judgment. Thank you, counsel. Thank you. Argument for the appellee. Good morning. Good morning. Please report. My name is Jeremy Gogol. I'm here for the appellee, April Sherrod. After her daughter, Amari Clark, was killed and April Sherrod was severely injured in a car crash with a drunk driver, April Sherrod sought recovery for herself and the estate of her daughter for the damages sustained. April paid e-insurance for an underinsured motorist policy of $50,000 per person and $100,000 per person. After receiving the policy and reading all of it, though, there was some confusion by what it purported to cover and what it attempted to exclude. While the policy contained a standard definition of an underinsured motorist under the Illinois Insurance Code, as well as a set-off provision that purported to reduce any UIM benefits by the amount recovered from a tort visa, the policy also contained language in the other insurance clause that appeared to provide underinsured motorist benefits in excess to that recovered from the tort visa. The language is set forth in the briefs. One thing that counsel for e-insurance raised is that the appellee here is ignoring the introductory language in the other insurance clause. We're not ignoring the introductory language in the other insurance clause. In fact, we're asking the court to read this entire policy as opposed to picking and choosing parts of it. For instance, the definition of an underinsured motorist, just looking at the set-off provision, just looking at any other provisions that may be favorable to their position. I would note that the introductory paragraph to the other insurance clause ends with, however. If we go down to the second paragraph, it says, Any insurance we provide with respect to a vehicle you do not own, including any temporary substitute, shall be accessed over any collectible insurance providing such coverage on a primary basis. The fact that e-insurance says the court does not need to look to the other insurance clause is disingenuous. And it flies in the face of Illinois case law. It flies in the face of HOPPS, which e-insurance cited for its position quite a bit in its briefs. It also signals that they know the other insurance clause is ambiguous and can be reasonably interpreted to mean what Sherrod believes it to mean. To be clear, we're not arguing that Missouri law applies here. What we are arguing is that there has never been a case in Illinois squarely on point addressing the ambiguities that have been raised in this case. For 20 to 25 years in the state of Missouri, this issue has been raised time and time again. There's nothing magic about the state of Missouri. It could be any other state. It could be any other jurisdiction. If it was Illinois that handed down these opinions, we wouldn't be standing here today. What we are asking of this court is, when you review this entire policy as a whole, that you consider these reasonable interpretations by all the different courts in Missouri for purposes of finding that there is indeed an ambiguity and that this is a reasonable interpretation of the policy language. UIM benefits, by definition, provide benefits with respect to vehicles that the insured does not own. Specifically, UIM benefits cover car crashes with underinsured vehicles, which are vehicles that are not owned by the insured. In other words, this language, insurance drafting this language, you could have very easily said after, with respect to a vehicle you do not own, and then provided some other language, and the vehicle owned by the tortfeasor covering bodily injury damages, you could have very easily said that. Sherrod, the insurance draft of this language, Sherrod is merely trying to hold them to their end of the bargain. She paid for this insurance. If insurance wanted to insure her with a policy with ambiguous language, they do so at their own peril. One final thing with respect to the public policy arguments, I don't believe those are applicable here. There is no public policy in favor of underinsured motorist coverage in Illinois. The fact that rates may skyrocket, may drop, insurers may drop out of the market, is not a consequence to this particular case. All we are looking at, in this particular case, is the language at issue in this policy. For that reason, we're asking that this court affirm the circuit court's opinion. If you have any questions. Thank you, Counselor. Any rebuttal? I was just going back to the language, and I know in your offices you'll have time to prove the language at length, but I do just want to go to the other insurance provision that Counsel just cited. He says that any insurance we provide with respect to a vehicle you do not own shall be accessed over any collectible insurance providing such coverage on a primary basis. That such coverage phrase necessarily requires you to go to the beginning of the section and see what coverage is being discussed, and the coverage that's being discussed is uninsured and underinsured motorist coverage. So this provision is essentially saying, yes, if we are providing you underinsured motorist coverage, this is the basis on which we'll provide it. We will provide it excess over any other underinsured motorist coverage. Here we're comparing apples and oranges. We're not being asked to devise or see who's primary or excess or prorate coverages under two underinsured motorist coverages. Counsel is asking us to apply the underinsured motorist other insurance provisions to the tort pleaser's bodily injury liability coverage, which is just not consistent with the law. And I do want to go simply to the public policy issue because it is relevant in this case. The Mecklenburg case has held that another insurance clause conforms to public policy if one, the insured will not be deprived of underinsured motorist protection, and two, the insured will receive underinsured motorist coverage up to the limits for which he or she paid. Here, Ms. Sherrod did receive the benefits for which she paid, i.e., she paid for $50,000 of underinsured motorist coverage, which would have applied if the bodily injury tort pleaser's limited liability had been less than $50,000. It was not, so she did not need underinsured motorist coverage because she wasn't involved in an accident with an underinsured motorist. So here, unlike a lot of the cases, including ones by this court, where there were reasons why the insured would end up being deprived of the underinsured motorist coverage that was purchased, in one case, such as Colson, it was because the insured was also compensated by a property owner. This is where a vehicle drove into the window of a Subway restaurant, and the plaintiff, who was an insured, was covered by the tort pleaser driver's policy, but also recovered from the property owner and the franchisee of the restaurant. The court said, no, and the tort pleaser automobile driver had $25,000 in coverage, and she had, say, $50,000 in underinsured motorist coverage, but received well beyond that from the property owner and franchisee. The court said, no, we have to compare the auto liabilities here, not other recoveries she had from defendants that weren't involved in the auto aspect of the case, and so she was entitled to recover the gap between the automobile driver's liability limit of insurance and her own underinsured motorist coverage because the court said she should get the underinsured motorist coverage for which she paid, and I agree with that decision. However, here, we do not have a bodily injury liability limit that's below the underinsured motorist coverage for which this insured paid. So I ask that you reverse the circuit court. Thank you. Thank you, counsel. We'll take this case under advisement and issue a written decision in due course.